UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.

STEPHEN E. SOEHREN,

    Plaintiff,

vs.

CINERGY HEALTH, INC.,
OMNI GUARD, LLC,
INVESTMENT DIAMONDS, LLC, and
DANIEL TOUIZER,

    Defendants.
_____/

## COMPLAINT

Plaintiff, STEPHEN E. SOEHREN ("PLAINTIFF"), by and through undersigned counsel, sues Defendants, Cinergy Health, Inc., a Florida corporation ("CINERGY"), Omni Guard, LLC, a Florida limited liability corporation ("OMNIGUARD"), Investment Diamonds, LLC ("DIAMONDS"), and Daniel Touizer ("TOUIZER") (collectively, "DEFENDANTS"), for rescission and damages, and alleges:

### Jurisdiction and Venue

1. This is an action for damages exceeding $75,000.00, exclusive of attorney's fees, pre-judgment interest, and costs.

2. PLAINTIFF at all times material hereto is and was a resident of Pennsylvania, is and was retired, and is and was over 65 years of age.

3. At all times material hereto, PLAINTIFF was in direct privity with each DEFENDANT.

4. At all times material hereto, PLAINTIFF was a purchaser of securities offered and sold by DEFENDANTS.

5. CINERGY is or was a Florida corporation headquartered in Florida. CINERGY consented in writing to venue exclusively in the courts of Miami-Dade County, Florida. On or about the time of PLAINTIFF'S investment, CINERGY was headquartered in Miami-Dade County, Florida, and otherwise is *sui juris*.

6. OMNIGUARD is or was a Florida limited liability corporation headquartered in Broward County, Florida, and otherwise is *sui juris*.

7. DIAMONDS is or was a Florida limited liability corporation headquartered in Broward County, Florida, and otherwise is *sui juris*.

8. Defendant TOUIZER is a natural person over the age of 18 years, and upon information and belief, resides in Miami-Dade County, Florida, and otherwise is *sui juris*. Upon information and belief, TOUIZER is an alien, being a citizen of Canada.

9. Defendant TOUIZER at all times material hereto is or was the sole officer and director of defendant CINERGY and is or was the majority shareholder and control person of defendant CINERGY.

10. Defendant TOUIZER at all times material hereto is or was the sole officer or director and managing member of defendant OMNIGUARD and is or was the majority member and control person of defendant OMNIGUARD.

11. Defendant TOUIZER at all times material hereto is or was the sole officer or director and managing member of defendant DIAMONDS and is or was the majority member and control person of defendant DIAMONDS.

12. At no time material hereto has Defendant TOUIZER been registered with the State of Florida, State of Pennsylvania, or with the U.S. Securities and Exchange Commission as a licensed securities broker dealer or associated person of a broker dealer.

13. The share interest in CINERGY purchased by PLAINTIFF is a security within the meaning of Florida Statute § 517.021, Securities Exchange Act of 1934 § 3, and Pennsylvania Securities Act § 102.

14. The membership interest in OMNIGUARD purchased by PLAINTIFF is a security within the meaning of Florida Statute § 517.021, Securities Exchange Act of 1934 § 3, and Pennsylvania Securities Act § 102.

15. The promissory note issued by INVESTMENT DIAMONDS, LLC purchased by PLAINTIFF is a security within the meaning of Florida Statute § 517.021, Securities Exchange Act of 1934 § 3, and Pennsylvania Securities Act § 102.

16. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because all parties are diverse in citizenship or residency, has supplemental jurisdiction over pendant state claims, and has federal question jurisdiction pursuant to Section 27 of the Securities Exchange Act of 1934 and 28 U.S.C. § 1331.

17. Venue is appropriate in this district because all DEFENDANTS reside within this district.

### Facts

18. In or about July 2010, PLAINTIFF received a cold call telephone solicitation from defendant TOUIZER. Describing defendant CINERGY, TOUIZER represented that CINERGY was a term policy health insurance company that was doing extremely well and would pay PLAINTIFF a monthly dividend at a rate of 10% per annum. TOUIZER represented that he was the president of CINERGY.

19. On the same telephone call, defendant TOUIZER claimed that an investment in CINERGY would be far more predictable than the volatile stock market, that gold had made its run so PLAINTIFF should sell his gold investment and invest the proceeds in CINERGY; that

3

CINERGY profits were instant as about 50% of the policy premium went directly to CINERGY, and that, in addition, CINERGY's overhead was low due to its call center business model where callers were induced to call to buy CINERGY insurance policies from CINERGY's advertisements.

20. TOUIZER's statement that CINERGY made 50% profit on its insurance premiums could not have been true in retrospect as CINERGY was unable to honor the payment in full of any dividend payment immediately after PLAINTIFF's investment or anytime thereafter.

21. On the same telephone call, defendant TOUIZER claimed that the origin of the inbound phone calls were nationwide and that CINERGY had up to a hundred trained and licensed insurance salesman manning the phones in CINERGY's office with each salesman selling an average of two policies per day resulting in CINERGY having a large monthly income and making CINERGY an absolute "cash cow." These statements were false.

22. On the same telephone call, defendant TOUIZER claimed that TOUIZER would sell CINERGY in a short time, perhaps in a year or more, as CINERGY has already had prospective buyers, and that PLAINTIFF would receive his principal back from the sale of CINERGY and make a profit. In the meantime, PLAINTIFF would gain large monthly dividends. These statements were false.

23. TOUIZER did not disclose that he had agreed on two earlier occasions to sell CINERGY but that he refused to appear at the closing of each of the proposed sale transactions. Had PLAINTIFF known of TOUIZER's inability to let go of CINERGY, he would not have believed TOUIZER's representation that CINERGY would be sold in a short time, or PLAINTIFF could have had his suspicions aroused and asked more questions of TOUIZER about his background and character.

24. Nevertheless, at that time, PLAINTIFF reasonably believed TOUIZER's sales pitch stated in the paragraphs above and relied upon in making his decision to invest in CINERGY. PLAINTIFF agreed to invest in CINERGY.

25. Defendant CINERGY then sent account opening papers to PLAINTIFF's third-party individual retirement account custodian and emailed PLAINTIFF with other correspondence.

26. On or about September 20, 2010, in cumulative remittances, PLAINTIFF invested approximately $300,000.00 in CINERGY, which was funded from his individual retirement account funds (stock purchase agreement and stock certificate attached as Exhibit A).

27. However, the monthly payments approximating a 10% annual dividend were never forthcoming. Instead, CINERGY remitted intermittent dividend payments to PLAINTIFF in the amount of $163.00 per month. TOUIZER telephoned PLAINTIFF in approximately December 2010 and told him that there was a temporary setback with CINERGY's cash flow and that it would soon straighten out.

28. On a telephone call in approximately late December 2010, TOUIZER pitched PLAINTIFF on another "great" investment opportunity in another company that he had formed, OMNI GUARD, LLC. TOUIZER stated that he was the president of OMNIGUARD. TOUIZER said that investing in OMNIGUARD would be a great idea because it would be paying significant returns during the time that CINERGY was having temporary difficulties. TOUIZER claimed that OMNIGUARD sold appliance and automobile maintenance contracts, and that it was a "cash cow" because the consumer would pay a monthly fee of which OMNIGUARD would keep about 50% and would pay the contract repair vendors the other 50%.

29. On or about January 19, 2011, PLAINTIFF invested $100,000 in an equity position in OMNIGUARD (subscription agreement and membership certificate attached as Exhibit B).

5

PLAINTIFF invested the balance agreed to be invested in July 2011. PLAINTIFF's second payment was in the amount of $35,000.

30. To invest in OMNIGUARD, in order to transfer his funds to DEFENDANTS, PLAINTIFF had to liquidate a traditional individual retirement account ("IRA") to create a Roth IRA, and was taxed $39,500 on the transaction. PLAINTIFF claims this tax loss as part of his damages.

31. Plaintiff never received any additional information from OMNIGUARD or TOUIZER about his investment in OMNIGUARD.

32. On or about January 2011, PLAINTIFF visited CINERGY's Aventura, Florida office, which was in the second floor of a strip mall, and was given a tour of the office by TOUIZER. TOUIZER told PLAINTIFF during the tour that sales were picking up, that CINERGY was selling a reasonable number of contracts per week assuring profits, and that business was increasing nicely. These statements were false.

33. On or about October, 2011, TOUIZER offered an equity participation to PLAINTIFF in yet another company that he claimed he had formed, Assura Plans ("ASSURA"), which purportedly sold long term care insurance policies. PLAINTIFF did not invest in ASSURA.

34. A second visit for PLAINTIFF to DEFENDANTS' offices in Florida was arranged by TOUIZER and PLAINTIFF was flown to Fort Lauderdale, Florida at DEFENDANTS' expense.

35. In a face-to-face meeting during PLAINTIFF's second trip to visit DEFENDANTS, TOUIZER explained how well things were progressing with CINERGY. He then gave PLAINTIFF a tour of DEFENDANTS' new offices, which were in a bank building.

36. At this meeting, TOUIZER offered PLAINTIFF an investment for the formation of DIAMONDS, a debt offering paying 15% interest per annum and the return of principal at the end of one year.

37. TOUIZER pitched the offering in DIAMONDS as being an offering of secured promissory notes.

38. As a purported token of good faith, TOUIZER also gave PLAINTIFF 0.4 of a share in DIAMONDS.

39. On or about January 30, 2012, PLAINTIFF agreed to invest and did invest $125,000.00 in DIAMONDS in the form of a promissory note (secured promissory note and security agreement attached as Exhibit C).

40. In early 2012 Plaintiff learned from an unsolicited phone call from a former associate of DEFENDANTS who knew that PLAINTIFF was an investor in DEFENDANTS. This informant said that TOUIZER let OMNIGUARD collapse shortly after PLAINTIFF made his investment.

41. In approximately May 2012, PLAINTIFF learned from a former associate of DEFENDANTS that:

A) TOUIZER had funneled hundreds of thousands of dollars belonging to CINERGY to or through a girl friend of his for gifts, cars, houses, life insurance, and possibly to another business not yet identified by PLAINTIFF;

B) CINERGY's funds and income were commingled to start OMNIGUARD, ASSURA, and INVESTMENT DIAMONDS; and

C) CINERGY'S chief financial officer has been paid a salary of $750,000 per year.

42. No shareholders or members of defendants CINERGY or OMNIGUARD were made aware nor consulted, nor did any shareholders or members of the defendant corporate entities approve of such actions by TOUIZER.

43. On or about November 14, 2012, TOUIZER contacted PLAINTIFF by telephone. In that conversation, TOUIZER admitted that he took a salary of $400,000 per year from CINERGY. TOUIZER also said he paid out $11 million in dividends from CINERGY but he did not explain what happened to PLAINTIFF's investment funds. He also said that INVESTMENT DIAMONDS was doing very well.

44. Approximately two weeks later, INVESTMENT DIAMONDS failed to pay PLAINTIFF his November 30, 2012 dividend payment, and the promissory note is in default.

45. No shareholders or members of Defendants CINERGY or OMNIGUARD were made aware of nor consulted about the amount of TOUIZER's salary, nor did any shareholders or members of the defendant corporate entities approve of such salary taken by TOUIZER.

46. At no time did TOUIZER disclose that he was not a licensed securities broker.

47. At no time did TOUIZER disclose to PLAINTIFF the poor financial conditions of CINERGY or OMNIGUARD.

48. At no time did TOUIZER disclose his track record of failed business ventures to PLAINTIFF.

49. On November 12, 2012, PLAINTIFF, through his legal counsel, sent a demand letter to DEFENDANTS, requesting rescission of his investments, including, but not limited to, statutory rescission , common law rescission, and claiming for damages. (Copy attached hereto as Exhibit D).

50. On November 26, 2012, legal counsel for Defendants notified Plaintiff's counsel that PLAINTIFF's demands were rejected.

51. PLAINTIFF has retained legal counsel and has incurred attorneys' fees and expenses for prosecuting his claims against DEFENDANTS.

## COUNT I
## RESCISSION OF CONTRACT
### (Against All Defendants)

52. PLAINTIFF realleges allegations 1 through 51 as if fully set forth herein.

53. PLAINTIFF was induced to enter subscription agreements with Defendants CINERGY and OMNIGUARD on various occasions.

54. PLAINTIFF elected to rescind the subscription agreements entered into with Defendants CINERGY and OMNIGUARD.

55. The subscription agreements entered into are voidable at the election of PLAINTIFF because: (a) DEFENDANT TOUIZER was not licensed as a securities broker, but he offered and sold securities for any issuer more than once every 12 months, making him a securities broker within the meaning of SEC Rule 3a4-1 promulgated under Section 3 of the Securities Exchange Act of 1934 [17 C.F.R. Section § 240.3a4-1 ] for which rescission is a remedy pursuant to Section 29 of the Securities Exchange Act of 1934, and possibly also was a broker within the meaning of the Florida and/or Pennsylvania securities laws; thus, TOUIZER did not have the legal capacity to enter into a contract as agent for DEFENDANTS CINERGY, OMNIGUARD, or DIAMONDS; (b) PLAINTIFF was induced to contract with DEFENDANTS CINERGY, OMNIGUARD, and/or DIAMONDS under false pretenses; and Defendant CINERGY failed to provide the 3-day rescission notice required to be delivered to securities purchasers pursuant to Florida law and/or the 2-day

rescission notice required to be delivered to securities purchasers pursuant to Pennsylvania law, and failed to limit the offering to accredited investors only in Pennsylvania, and may have failed to comply with Florida and/or Pennsylvania securities laws in other respects.

56. PLAINTIFF's attempt to demand rescission has been rejected by DEFENDANTS.

**WHEREFORE**, PLAINTIFF demands judgment for rescission against DEFENDANTS, jointly and severally, for damages in the amount of $474,500, plus economic damages and special or consequential damages, costs, pre-judgment interest, statutory attorney's fees and for such other and further relief that the Court deems just and proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION
## (Against Defendants Touizer, Cinergy, and Omni Guard)

57. PLAINTIFF realleges allegations 1 through 51 as if fully set forth herein.

58. DEFENDANTS, in connection with the offer, sale, or purchase of any investment or security, or in the inducement to enter into a contract, directly or indirectly, and negligently:

   a. Supplied false and material information to PLAINTIFF or omitted material information in the course of his business dealings with one or more DEFENDANTS;

   b. Defendant TOUIZER, individually, or an employee of Defendant CINERGY and/or of Defendant OMNIGUARD was negligent in communicating the false information or was negligent in omitting material information;

   c. That PLAINTIFF was a person for whose benefit and guidance one or more DEFENDANTS intended to supply the false information or intended to omit material information for use in determining whether to invest with one or more DEFENDANTS;

   d. That Defendant TOUIZER, individually, or an employee of Defendant CINERGY and/or of Defendant OMNIGUARD intended the false or omitted information to influence PLAINTIFF in agreeing to invest with one or more DEFENDANTS;

   e. That PLAINTIFF justifiably relied on the false and omitted information; and

10

  f. That PLAINTIFF's reliance on the false or omitted information directly and proximately caused PLAINTIFF damages.

**WHEREFORE**, PLAINTIFF demands judgment for rescission against Defendants Touizer, Cinergy, and Omni Guard, jointly and severally, for damages in the amount of $474,500, plus special or consequential damages, costs, pre-judgment interest, statutory attorney's fees and for such other and further relief that the Court deems just and proper.

## COUNT III
## VIOLATION OF FLORIDA SECURITIES & INVESTOR PROTECTION STATUTE
### (Against Defendants Touizer, Cinergy, and Omni Guard)

59. PLAINTIFF realleges allegations 1 through 51 as if fully set forth herein.

60. DEFENDANTS, in connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, directly or indirectly, and negligently:

  A. employed a device, scheme, or artifice to defraud; or

  B. obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

  C. engaged in a transaction, practice, or course of business which operated or would have operated as a fraud or deceit upon a person, in violation of Florida Stat. § 517.301.

  D. In that, DEFENDANTS, acting individually or in concert, have made untrue statements of material fact, or omitted a statement of a material fact, which would tend to mislead a prospective buyer or seller of

11

securities; in that they failed to inform PLAINTIFF of the material information pled above and misstated material facts pled above.

**WHEREFORE**, PLAINTIFF demands judgment against Defendants Touizer, Cinergy, and Omni Guard, jointly and severally, for rescissionary damages in the amount of $474,500, plus economic and special or consequential damages, costs, pre-judgment statutory interest, statutory attorney's fees and for such other and further relief that the Court deems just and proper.

**COUNT IV**
**VIOLATION OF PENNSYLVANIA AND FEDERAL ANTIFRAUD STATUTES**
**(Against Defendants Touizer, Cinergy, and Omni Guard)**

61. PLAINTIFF realleges allegations 1 through 51 as if fully set forth herein.

62. DEFENDANTS, in connection with the offer, sale, or purchase of any investment or security, directly or indirectly, willfully and recklessly:

    A. employed a device, scheme, or artifice to defraud; or

    B. obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    C. engaged in a transaction, practice, or course of business which operated or would have operated as a fraud or deceit upon a person, in violation of § 401 of the Pennsylvania Securities Act of 1972 and/or Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

      D.      In that, DEFENDANTS, acting individually or in concert, have made untrue statements of material fact, or omitted a statement of a material fact, which would tend to mislead a prospective buyer or seller of securities; in that they failed to inform PLAINTIFF of the material information pled above and misstated material facts pled above.

**WHEREFORE**, PLAINTIFF demands judgment against Defendants Touizer, Cinergy, and Omni Guard, jointly and severally, for rescissionary damages in the amount of $474,500, plus economic and special or consequential damages, costs, pre-judgment statutory interest, statutory attorney's fees and for such other and further relief that the Court deems just and proper.

## COUNT V
## BREACH OF FIDICUARY DUTY
### (Against Defendant Touizer)

63. PLAINTIFF realleges allegations 1 through 51 as if fully set forth herein.

64. Defendant TOUIZER, as an officer, director, and/or controlling shareholder of Defendant CINERGY, owed a fiduciary duty to PLAINTIFF, a minority shareholder of CINERGY.

65. Defendant TOUIZER breached that duty by committing the actions and inactions pled above.

66. Defendant TOUIZER acted with willful misconduct, bad faith, or gross negligence;

67. PLAINTIFF suffered damages as a proximate result of that violation of the fiduciary obligation.

      WHEREFORE, Plaintiff Stephen E. Soehren demands judgment against Defendant Daniel Touizer for $474,500, costs, pre-judgment interest, and for such other and further relief the Court deems just and proper.

## COUNT VI
## BREACH OF FIDICUARY DUTY
## (Against Defendant Touizer)

68. PLAINTIFF realleges allegations 1 through 51 as if fully set forth herein.

69. Defendant TOUIZER, as a managing member, officer, director, and/or controlling member of Defendant OMNIGUARD, owed a fiduciary duty to PLAINTIFF, a minority member of OMNIGUARD.

70. Defendant TOUIZER breached that duty by committing the actions and inactions pled above.

71. Defendant TOUIZER acted with willful misconduct, bad faith, or gross negligence;

72. PLAINTIFF suffered damages as a proximate result of that violation of the fiduciary obligation.

   WHEREFORE, Plaintiff Stephen E. Soehren demands judgment against Defendant Daniel Touizer for $474,500, costs, pre-judgment interest, and for such other and further relief the Court deems just and proper.

## COUNT VII
## BREACH OF CONTRACT
## (Against Defendant Investment Diamonds)

73. PLAINTIFF realleges allegations 1 through 51 as if fully set forth herein.

74. Defendant INVESTMENT DIAMONDS entered into a debenture agreement with PLAINTIFF.

75. Defendant INVESTMENT DIAMONDS was required to make monthly payments of interest and to pay the principal in its entirety in February 2013 to PLAINTIFF.

76. Defendant INVESTMENT DIAMONDS breached the contract by failing to pay the November 2012 interest payment or any payments thereafter.

WHEREFORE, Plaintiff Stephen E. Soehren demands judgment against Defendant Investment Diamonds, LLC for $125,000, costs, pre-judgment interest, attorneys' fees, and for such other and further relief the Court deems just and proper.

Respectfully Submitted,

Dated: December 10, 2012

By: _____
RUSSELL C. WEIGEL, III
Fla. Bar No. 822159

**RUSSELL C. WEIGEL, III, P.A.**
5775 Blue Lagoon Drive
Suite 100
Miami, FL 33126
Tel:   (786) 888-4567
Fax:   (786) 787-0456

*Counsel for Plaintiff*